**NOT RECOMMENDED FOR PUBLICATION**
File Name: 06a0638n.06
Filed: August 23, 2006

**No. 05-4297**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARK McCONNELL,                                      )
                                                     )
    Plaintiff-Appellant,                             )
                                                     )
v.                                                   )  ON APPEAL FROM THE UNITED
                                                     )  STATES DISTRICT COURT FOR
                                                     )  THE SOUTHERN DISTRICT OF
SWIFTY TRANSPORTATION, INC. and SWIFTY               )  OHIO
OIL CO.,                                             )
                                                     )
    Defendants-Appellees.                            )

Before: SILER, McKEAGUE, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Mark McConnell, a gasoline truck driver for Swifty Oil Company ("Swifty Oil") and Swifty Transportation ("Swifty Transportation") (or, collectively, "Swifty"), was diagnosed with acute stress reaction accompanied by difficulty sleeping and concentrating. He obtained leave from employment under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and applied for short-term disability benefits. After his application for short-term benefits was partially denied, McConnell allegedly threatened the benefits provider representative with retribution and Swifty subsequently discharged him on this ground. He now appeals the district court's grant of summary judgment in favor of Swifty on his claims of FMLA interference and retaliation. For the following reasons, we **AFFIRM**.

**I. Background**

For sixteen years, McConnell worked for Swifty as a gasoline truck driver and, for much of the time, he served as lead driver. As such, he was responsible for overseeing two other drivers and for performing various administrative duties. In early 2003, McConnell began suffering from difficulty sleeping and concentrating. After attempting to work a modified schedule, Dr. Ryan, McConnell's physician, diagnosed him with acute stress reaction and major depression. He prescribed an anti-depressant for McConnell and placed him on medical leave for two weeks. Upon reexamination, Dr. Ryan extended McConnell's leave for two months and prescribed additional medication.

After initial delays in his application due in part to McConnell's failure to sign a medical release provision, his application was sent to Jefferson Pilot Life Insurance, Swifty's disability benefits provider. After reviewing McConnell's application and medical records, Evonne McHugh, a Jefferson Pilot benefits representative, sent McConnell a letter stating that McConnell's request for short-term disability benefits through June 26, 2003 had been granted, but that benefits after that time were denied. The letter to McConnell explained that there was a lack of medical documentation to establish that his condition was severe enough to render him totally disabled beyond June 26, 2003.

McHugh subsequently called McConnell to inform him of Jefferson Pilot's decision. During the conversation, McConnell informed McHugh that the medical documentation she needed was either on her desk or someone's desk at Swifty Transportation. According to McHugh, McConnell became "meaner" and "more and more upset" as the conversation continued. McHugh's notes indicate that McConnell told her that he "wished he could pay his doctor to release him [to return

- 2 -

to work] as he drived [sic] a gas tanker truck and would personally come pay me a visit." McHugh told McConnell she would document that comment because it was of a "threatening nature." McConnell denies making such a statement.

Immediately following the call, McHugh contacted her supervisor to report the threat. Her supervisor then contacted Jefferson Pilot security personnel. Approximately fifteen minutes after her conversation with McConnell, McHugh contacted Bridget Smith at Swifty. She informed Ms. Smith about Jefferson Pilot's partial denial of McConnell's application and told her that when she informed McConnell about the denial, he became upset and agitated. McHugh then began crying and said that when she spoke with McConnell, he had threatened to come pay her a visit. In turn, Ms. Smith contacted Don Smith, President of Swifty Transportation, and reported McHugh's complaint. Within minutes, Mr. Smith called McHugh, expressed his apologies, and stated that she would not have to worry about McConnell's threat because he would no longer be a Swifty employee.

The following day, Mr. Smith contacted Pat Adamson, the Traffic Manager for Swifty Transportation and one of McConnell's managers. He advised Adamson that McHugh told him that McConnell had threatened her. Mr. Smith instructed Adamson to investigate the allegation further and terminate McConnell if he verified McHugh's claim. Adamson called McConnell to discuss his earlier conversation with Ms. Smith about the alleged threat. There is disagreement between those two as to whether McConnell admitted to making the alleged threatening statement; however, both parties agree that during that conversation Adamson terminated McConnell's employment with Swifty.

No. 05-4297
*McConnell v. Swifty Transp., Inc. and Swifty Oil Co.*

## II. Discussion

We review a district court's grant of summary judgment de novo. *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 409 (6th Cir. 1999).

McConnell presents two arguments on appeal: first, that Swifty unlawfully interfered with his rights under the FMLA by delaying the processing of his short-term disability benefits application; and second, that Swifty unlawfully retaliated against him for exercising his rights under the FMLA by terminating his employment.

### A. Swifty's Alleged Delay in Processing McConnell's Benefits Application

The FMLA entitles qualifying employees to 12 weeks of unpaid leave if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Employers may not interfere with, restrain, deny the exercise of, or deny the attempt to, exercise any right provided under the Act. *Id.* § 2615(a)(1). McConnell maintains that Swifty interfered with his rights under the FMLA by delaying the processing of his application for short-term disability benefits.

McConnell's health condition was sufficiently serious to render him unable to perform the usual functions of his job as a truck driver for Swifty. To prevail on his interference claim, McConnell must prove that (1) he is an "eligible employee"; (2) the defendant is an "employer"; (3) McConnell was entitled to leave under the FMLA; (4) McConnell gave Swifty notice of his intention to take leave; and (4) Swifty denied McConnell FMLA benefits to which he was entitled. *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003). The benefit McConnell sought was reinstatement upon return from leave.

McConnell asserts that Swifty intentionally delayed the processing of his application for short-term disability benefits; Swifty contends that McConnell and Dr. Ryan delayed the processing. The district court concluded that, based on the record evidence, McConnell and Ryan were responsible for the delay, and we agree. McConnell applied for short-term disability benefits on May 30, 2003. Dr. Ryan, however, failed to provide the necessary physician's certification until June 16, 2003. Additionally, McConnell failed to sign the release on the application, even though the application stated that failure to do so would delay the processing of the application.

McConnell theorizes that Swifty advanced its agenda to delay his application by notifying Jefferson Pilot that he was working another job during his FMLA leave, which, if true, would preclude him from benefits eligibility. Bridget Smith admitted that she notified Jefferson Pilot that another employee, Seth Wooten, had mentioned that McConnell was elsewhere employed during his leave. Jefferson Pilot informed Swifty that investigating such a claim was Swifty's responsibility; Swifty investigated the allegation and determined that McConnell was not working elsewhere. Swifty notified Jefferson Pilot of its findings on July 8, 2003. Jefferson Pilot subsequently requested medical records from Dr. Ryan on that same date.

These facts notwithstanding, Swifty's investigation into McConnell's alleged other employment did not appreciably delay the processing of his application independently of his failure to sign the release on the application and Dr. Ryan's failure to submit the necessary physician's certification. Additionally, the July 4 holiday weekend and pre-planned vacations added slightly to the delay in processing McConnell's benefits, but no more than they contributed to the delay in processing all other applications. The district court correctly found that because Jefferson Pilot

continued to process McConnell's application while the work situation was being investigated by Swifty, this reason alone did not establish a genuine issue of material fact respecting Swifty's interference with McConnell's FMLA benefits.

## B.  FMLA Retaliation Claim

The FMLA prohibits employers from retaliating against employees by discharging them for opposing a practice made unlawful by the statute.  29 U.S.C. § 2615(a)(2); *see also Hoffman v. Prof'l Med Team*, 394 F.3d 414, 420 (6th Cir. 2005).  Where no direct evidence of retaliation exists, the plaintiff must first establish a prima facie case of retaliation utilizing indirect evidence.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  If McConnell presents a prima facie case of discrimination, then the burden shifts to Swifty to articulate a legitimate, nondiscriminatory reason for his discharge. *McDonnell Douglas*, 411 U.S. at 802-04.  If Swifty articulates such a reason, then McConnell bears the burden of showing that the articulated reason is, in reality, a pretext to mask discrimination.  *Id.* at 804-06.

### 1.  Prima Facie Case

To establish a prima facie case of retaliatory discharge, McConnell must prove that:  (1) he availed himself of a protected right under the FMLA by notifying Swifty of his intent to take leave; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the protected activity and the adverse employment action. *Skrjanc*, 272 F.3d at 314.  Here, McConnell has proven a prima facie case of retaliatory discharge.  Swifty's discharge of McConnell during his FMLA leave supports an inference of intentional prohibited activity.  *See id.*  ("[T]he

proximity in time between Skrjanc's request for leave and his discharge constitutes indirect evidence of a causal connection between his exercise of a right under the FMLA and the adverse employment decision.").

### 2. *Swifty's Proffered Legitimate, Nondiscriminatory Reason for Termination*

Because McConnell proved a prima facie case of retaliatory discrimination, the burden shifted to Swifty to come forth with a legitimate, nondiscriminatory reason for McConnell's discharge. Swifty posits that it possessed an honestly held belief that McConnell threatened McHugh and that the threat involved the use of one of its tanker trucks. Neither party challenges the district court's acceptance of Swifty's proffered legitimate, nondiscriminatory reasons for terminating McConnell. Instead, both parties focus on whether Swifty's proffered reasons are prextextual.

### 3. *Pretext*

A plaintiff can establish pretext in one of three ways: first, by showing that the proffered reasons had no basis *in fact*; second, by showing that the proffered reasons did not *actually* motivate his discharge; or third, by showing that the proffered reasons were *insufficient* to motivate his discharge. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). McConnell "must allege more than a dispute over the facts upon which his discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). "He must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Id*.

McConnell has not shown that Swifty's proffered explanation for his discharge is pretextual in any of these three ways. He first argues that Swifty terminated his employment in part because his FMLA leave caused Swifty to incur additional expenses and liabilities primarily because it was forced to hire outside contractors to perform his employment obligations during his leave. However, as the district court correctly noted, "increased costs and potential liabilities are inherent anytime an employee takes leave from a company" and "[t]o find a showing of pretext based solely on this theory would give any employee who was fired while on leave a free pass to trial." McConnell also argues that Swifty's proffered reason of an honestly held belief that he threatened McHugh is pretextual because, until his FMLA leave, he had a favorable employment record with Swifty. This contention too is unpersuasive, as it proves no more than that absent any misconduct on McConnell's part, Swifty was unlikely to terminate his employment.

McConnell's final contention of pretext is that, due to the short time frame in which Swifty determined to discharge him, its belief that he threatened McHugh could not be honestly held. In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse employment action, we consider whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *Braithwaite*, 258 F.3d at 494. In *Smith v. Chrysler*, 155 F.3d 799, 807 (6th Cir. 1998), we noted that

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id*. Importantly, we must not second guess the business judgment of the employer, but simply evaluate "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

The record indicates Swifty honestly believed that McConnell threatened McHugh and that its decision to terminate him was reasonably informed and considered. Swifty offered the testimony of McHugh, Bridget Smith, Don Smith, and Adamson. In brief, McHugh testified that on July 22, 2003 she had a telephone conversation with McConnell during which he made what she perceived to be a threat. After ending her call with McConnell, McHugh quickly informed her supervisor and then contacted Bridget Smith. Smith testified that McHugh was upset and began crying while relaying the conversation she had with McConnell. McHugh's demeanor during her conversation with Bridget Smith was therefore consistent with a threat having been made against her. Shortly after concluding her call with McHugh, Bridget Smith relayed her conversation with McHugh to Don Smith, president of Swifty Transportation. Mr. Smith then quickly contacted McHugh and confirmed the allegation.

McConnell points out that McHugh testified that Mr. Smith told her during that call that McConnell would be fired. Of course, this statement occurred before Mr. Smith had obtained McConnell's version of events. Regardless, Smith took the extra step of having Adamson contact McConnell to get McConnell's version of the alleged threat. Adamson testified that on July 23, 2003 he spoke with McConnell on the phone and during this conversation McConnell admitted to threatening McHugh. Swifty contends that it decided to terminate McConnell based on his conversation with Adamson. McConnell, of course, denies making any admission but did testify

in his deposition that he told McHugh that "he was mad enough that if I could afford it, I would drive my truck to Swifty and take care of it myself because it was intentionally too long with no money."

In an attempt to demonstrate that Swifty's belief was not reasonably held, McConnell offers two pieces of evidence. First, he presents a two-minute timeline of the decision to terminate him based on McHugh's contemporaneous notes of her conversation with McConnell. Second, McConnell offers his denial of the threat and a denial that he admitted to Adamson that he made the alleged threat.

Even viewing this evidence in a light most favorable to McConnell, McConnell has not produced sufficient evidence to prove that Swifty's belief was not honestly held. While a two-minute decision may not seem like sound business judgment, we must not substitute our own judgment for the reasoned judgment of a business decisionmaker. What the timeline also shows is that Mr. Smith, upon hearing about the threat, contacted McHugh to confirm that a threat was made before making any final and conclusive decision as to McConnell.

McConnell claims that the decision to fire him was made solely upon this one conversation with McHugh and without first questioning him as to the validity of the claim. Assuming this is true, that does not mean that Mr. Smith's belief was not honestly held. Additionally, McConnell does not dispute that Adamson contacted him to get his version of the story and that he was fired only after Adamson had heard McConnell's version of the threat. Accordingly, McConnell has failed to prove the necessary pretext.

**AFFIRMED**.

No. 05-4297
*McConnell v. Swifty Transp., Inc. and Swifty Oil Co.*