**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0618n.06
Filed: August 24, 2007

No. 06-1752

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SHARRON LAROCQUE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CITY OF EASTPOINTE, | ) | EASTERN DISTRICT OF MICHIGAN AT |
| | ) | DETROIT |
| Defendant-Appellee. | ) | |
| | ) | |

Before: DAUGHTREY and GILMAN, Circuit Judges; ADAMS, District Judge.[*]

PER CURIAM. Pro se Appellant Sharron Larocque appeals the district court's granting of summary judgment for Appellee City of Eastpointe.

Appellant brought this action under Title VII, 42 U.S.C. § 2000e, *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et seq.,* alleging hostile work environment, sex discrimination and unlawful retaliation by her former employer, Appellee City of Eastpointe ("the City"). The district court granted the City's motion for summary judgment on the federal claims and declined to exercise jurisdiction over Appellant's remaining state-law claims. For the reasons set

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, Eastern Division, sitting by designation.

forth below, we **AFFIRM** the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 1999, Appellant was hired by the City as a part-time Code Enforcement Officer ("CEO"). The position of CEO is within the Police Department but is held by a civilian. The duties of a CEO include impounding abandoned vehicles, issuing citations, and monitoring ordinance violations. Appellant reported to and was supervised by members of the police force with the following order of command: Chief of Police, Inspector, Lieutenant, Sergeant, Corporal, and Patrol Officer. Her direct supervisor changed, depending on the particular administrative officer on duty. Appellant was an "at will" employee.

When Appellant began her position, she took an Oath of Office, acknowledging her duty to "secure and maintain the honest and efficient administration of the affairs" of the City. Appellant also received a Policies and Procedures handout covering the rules and regulations of the Department. This handout required her to "perform [her] duties in an efficient, honest, and business-like manner." It also stated that, "[n]o member or employee shall knowingly falsify any official report or enter or cause to be entered any inaccurate, false or improper information in the records of the Department." Violation of the rules could result in discipline up to and including discharge.

### I. Alleged Sexual Harassment

Appellant sets out two incidents of alleged sexual harassment -- one in October 2003 in the hallway at the Department and one in November 2003 in the parking lot of the Department.

**A.  The Hallway Incident**

On September 30, 2003, while dispatched to an abandoned vehicle, Appellant claimed that she was yelled at over the radio by Officer Lance Lamm.  This incident upset Appellant and she asked her supervisor to speak to Officer Lamm about his behavior.  Two days later, while working at the Department, Appellant overheard Officer Ricky Hill speaking to Officer Lamm.  She alleged that Officer Hill told Officer Lamm that the reason Appellant got so upset about the incident was because she wanted to have sex with him (Officer Lamm) and that he should take her out and "do her" or "hump her," making reference to a prior Christmas party.  Appellant stated that Officer Lamm told Officer Hill to "cut it out" and that he smiled as he walked away.  Becoming upset about the incident, Appellant made the excuse that she was sick, and left work.  On October 6, 2003, Cpl. Przywara spoke with Appellant about why she had left that day.  Appellant told him about the incident.  Cpl. Przywara told her that he would speak to Officer Hill, but he never did.

**B.  The Parking Lot Incident**

Appellant alleged that, on November 27, 2003, she  met Officer Hill in the parking lot at the Department.  Although the two conversed, both stayed in their vehicles.  Appellant claimed that

Officer Hill told her that he believed she and Lamm had previously had a sexual relationship and that she wanted to start a sexual relationship with him again. She also alleged that Officer Hill stated that she was sleeping with everyone in the Department and that she was trying to ruin Lamm's career and "fuck up his life" by making false allegations. Appellant alleged Officer Hill told her that she was "trying to fuck up an officer and end his career." Appellant claimed she was warned to "stay away from the supervisors" and "keep [her] sexual relationship with [Lamm] outside of the job." This incident was reported to Cpl. Genter by Appellant, but he took no action.

## II. Investigation

On December 4, 2003, Chief Danbert called a meeting with Appellant and the two officers assigned to perform the investigation, Sgt. Bourgeois and Lt. Zavislak. Sgt. Bourgeois, new to these types of investigations, was assigned to investigate the matter. Lt. Zavislak was assigned to oversee the investigation and to recommend any action to be taken by the Department. Chief Danbert asked Appellant to describe her allegations of sexual harassment and to put her complaint in writing.

Both Sgt. Bourgeois and Lt. Zavislak performed an investigation and prepared written reports. Sgt. Bourgeois reviewed Appellant's written complaint, the daily time sheets and log sheets for Appellant and Officer Hill, and the in-car audio/video tapes from Officer Hill's vehicle on November 24, 2003. He interviewed Appellant; Officers Hill, Lamm, Gibson, and Rebant; Animal Control Officer Schroeder; and two civilian employees -- Casternelli and Lewton. Sgt. Bourgeois had Appellant review the tape of the November 24th meeting between Appellant and Hill, which

contradicted her allegations. Appellant gave no explanation for the discrepancy. The next day, she reported to the investigators that she believed the conversation she was referring to in the complaint had actually occurred two weeks prior. Despite Appellant's explanation, Sgt. Bourgeois determined that her allegations were unfounded and that no other meeting occurred at or near the Department other than the one that was contained in the audio recording.

Lt. Zavislak also prepared a report of his investigation. He found that the allegation regarding the hallway incident could neither be proven nor disproven because it was a "he said she said" situation. Lt. Zavislak, however, found that Appellant's allegations regarding statements made by Officer Hill in the parking lot of the Department were unfounded based on the videotape evidence. He also set out what he believed were mistakes made by the officers who handled the initial complaints. Lt. Zavislak found that Cpl. Przywara failed to document the initial complaint or perform any follow-up actions. He also determined that Cpl. Genter should have followed up with Appellant when she reported sexual harassment concerns to him and documented and investigated her concerns. These reports were reviewed by Chief Lauretti, who succeeded Chief Danbert.

## III. Termination

On July 12, 2004, Appellant received a letter from the City notifying her that she had been charged with misconduct. The letter set forth allegations that she had made false verbal and written reports about the conversation she had with Officer Hill on November 24, 2003. Appellant was directed to the Policies and Procedures manual regarding the general rules on conduct, discipline,

integrity, reports and bookings, and truthfulness. A hearing was held on July 15, 2004. Appellant submitted a letter in support of her prior statements, reiterating that her dates could have been incorrect but that all facts were true. She put on no other evidence or testimony. Appellant's employment was terminated on July 19, 2004. She received notice through a letter from the City.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "The moving party bears the initial burden of showing the absence of a genuine issue of material fact." *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 934 (6th Cir. 2000). Once the movant has satisfied its burden, the nonmoving party must produce evidence showing that a genuine issue remains. *Id.*

The court must credit all evidence presented by the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* The nonmovant must, however, "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Summary judgment is proper when the nonmoving party has had adequate time for discovery and yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. We review a district court's grant of summary judgment

*de novo.* *See, e.g., Spencer v. Bouchard,* 449 F.3d 721, 727 (6th Cir. 2006).

**DISCUSSION**

In opposing the motion for summary judgment, Appellant attacked the truthfulness of the statements made by the officers who were involved in the incidents and makes new allegations about the investigating officers. However, when reviewing a motion for summary judgment, a court does not weigh the credibility of the witnesses. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (holding that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment"). A court's function, at the district court level and on a *de novo* review at the appellate level, is to review the evidence in a light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact.

**I.  TITLE VII SEX DISCRIMINATION/HOSTILE WORK ENVIRONMENT**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his[/her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 825 (6th Cir.1997). Sex discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). However, not all conduct that has sexual overtones is forbidden under the statute. *Meritor*, 477 U.S. at 67. The harassment must affect a "term, condition, or privilege" of the employment. *Id.* The *Harris* Court stated that:

> mere utterance of an ... epithet which engenders offensive feelings in an employee, does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

510 U.S. at 21-22 (internal citations omitted).

In *Meritor,* the Supreme Court stated that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victm's] employment and create an abusive working environment." 477 U.S. at 67 (internal citations omitted). The *Harris* Court set forth a nonexclusive list of factors to consider when determining whether the environment was hostile or abusive, including the frequency and severity of the conduct, whether it was physically threatening or humiliating, whether it was merely an utterance, and whether it unreasonably interfered with the person's work performance.

In order for a plaintiff to establish a prima facie case of hostile work environment based on sexual harassment by a co-worker under Title VII, the following elements must be demonstrated:

> (1) [the plaintiff] was a member of a protected class; (2) [the plaintiff] was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829-30 (6th Cir. 1999)**.**

The reasonableness standard announced in factor five above holds an employer liable only when the employer responds to charges of co-worker sexual harassment and demonstrates "indifference or unreasonableness in light of the facts the employer knew or should have known." *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997). This analysis involves both objective and subjective components: "(1) whether a reasonable person would find the environment objectively hostile, and (2) whether the plaintiff subjectively found the conduct 'severe or pervasive.'" *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 568 (6th Cir.1999). Additionally, this Court must look to the "totality of the circumstances" in determining a hostile work environment claim. *Harris*, 510 U.S. at 23. "Even where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Williams,* 187 F.3d at 563.

It is not disputed that Appellant satisfies the first three elements because she is a member of a protected class who was subjected to unwelcome harassment, and the harassment complained of was based on sex. Appellant does not argue that the harassment interfered with her work performance. On the contrary, she accentuates her solid performance record with the Department.

Therefore, she must demonstrate that the harassment "created a hostile or offensive work environment that was severe and pervasive." *Fenton*, 174 F.3d at 830.

Although verbal conduct alone can be the basis of a hostile work environment claim, *Black,* 104 F.3d at 826. Appellant failed to establish that a reasonable person would consider the environment objectively hostile. The comments made in the hallway were not directed at Appellant and there is no indication that the conversation was designed for her to hear what was being said. This occurrence appears to be no more than a mere utterance, and thus is not actionable under Title VII. It is therefore unnecessary to discuss whether the employer took prompt action.

The parking lot incident also does not demonstrate an objectively hostile environment. Appellant did not work with these officers on a daily basis. It appears that she and the officers had no contact apart from occasional calls that would bring them to the same location or instances when they were at the Department at the same time. Although Appellant claims she was threatened, even in her statement she does not allege that Officer Hill made a physical or verbal threat against her other than telling her to stay away from supervisors. The comments were based in rumor and innuendo. There was only one instance when comments were made directly to Appellant. Again, the incident appears to be no more than a mere offensive utterance and does not rise to the level of creating an objectively hostile work environment. We also note that when her supervisor was informed of the second incident, he immediately began an investigation.

Because Appellant failed to set forth a prima facie case of sexual harassment and hostile

work environment, there is no genuine issue of material fact and summary judgment for the City was proper.

## II. RETALIATION

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he/she engaged in a protected activity; (2) the defendant had knowledge of the protected conduct; (3) the defendant took an adverse employment action against the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. *Weigel v. Baptist Hosp. of East Tennessee,* 302 F.3d 367,381 (6th Cir. 2002) (applying the factors from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), to a retaliation claim). Upon a showing of a prima facie case of retaliation, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's actions. *Id.* If the employer makes such a showing, the plaintiff bears the burden of persuasion, by a preponderance of the evidence, and must demonstrate that the proposed reason was merely pretext for the unlawful retaliation. *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792-93 (6th Cir. 2000). A plaintiff must provide evidence to show that the employer did not "'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998)). The Court looks to whether the employer can establish "reasonable reliance" on the facts before it when the decision was made. *Smith*, 155 F.3d at 807 ("[T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.").

Viewing the evidence in a light most favorable to Appellant, we conclude that she has made a prima facie case for retaliation. Appellant engaged in the protected activity of reporting perceived sexual harassment to her supervisor on each of the two occasions she identified. The City had knowledge, through its agents, of the protected conduct. The City terminated her employment and that termination was causally connected to her reporting the alleged harassment.

The City, however, articulated its reason for terminating Appellant, claiming that she was dishonest and had filed a false report of sexual harassment, thus violating the rules of employment set out in the policies and procedures manual. The Department compared Appellant's statements about the harassment by Officer Hill to the video tape from Officer Hill's police cruiser and determined that Appellant had made false statements. Based on this, the Department made the decision to terminate Appellant's employment. We agree with the finding of the district court that the reason stated by the City is a legitimate, nondiscriminatory reason for Appellant's termination.

The burden next shifts back to Appellant to establish that the offered explanation was merely pretext for the City's retaliatory actions. Appellant's opposition to the motion for summary judgment asserted that the investigation of her alleged misconduct was untimely and one-sided, and, thus, merely a cover-up for the real reason, namely retaliation. Appellant's argument is without merit.

This Court stated in *Balmer v. HCA, Inc.,* 423 F.3d 606 (6th Cir. 2005):

The plaintiff must produce sufficient evidence from which the jury could "reasonably

> reject [the defendants'] explanation" and infer that the defendants "intentionally discriminated" against her. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 246-47 (6th Cir. 1997). The plaintiff must submit evidence demonstrating that the employer did not "'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith v. Chrysler*, 155 F.3d 799, 806-07 (6th Cir. 1998)). To inquire into the defendant's "honest belief," the court looks to whether the employer can establish "reasonable reliance" on the particularized facts that were before the employer when the decision was made. *Smith,* 155 F.3d at 807.

*Id.* at 614.

Appellant has offered no evidence upon which a jury could reasonably base a rejection of the offered explanation. Additionally, an investigation was performed, evidence was reviewed, and witnesses were questioned. The reports filed by the officers and the termination letter all indicate that the sole reason for the adverse employment action was the Department's belief that Appellant was dishonest about the alleged harassment and had filed a false report. Therefore, without evidence to the contrary, we conclude that the employer made a reasonably informed decision about terminating Appellant's employment. Because Appellant failed to demonstrate a genuine issue of material fact regarding her retaliation claim, summary judgment for the City was proper.

## CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.