Bobbie Joe WOFFORD,
Plaintiff–Appellant,

v.

MIDDLETOWN TUBE WORKS,
INC., Defendant–Appellee.

No. 01–4190.

United States Court of Appeals,
Sixth Circuit.

June 5, 2003.

BEFORE: BOGGS, SUHRHEINRICH, and SILER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Plaintiff–Appellant Bobbie Joe Wofford, a black man, appeals from the district court's grant of summary judgment in favor of Defendant–Appellee Middletown Tube Works, Inc. ("Middletown"), on Wofford's claim of employment discrimination under Title VII of the Civil Rights Act of 1964 and Ohio Rev.Code § 4112.02, arising out of the denial of a health insurance card and eventual termination.

The district court granted summary judgment for Middletown, holding that Wofford had not demonstrated a *prima facie* case of discrimination because he was not treated worse than similarly-situated white employees. Moreover, even had he demonstrated a *prima facie* case, the district court held that Middletown had presented legitimate, non-discriminatory business reasons for Wofford's termination, which Wofford did not rebut as pretext.

On appeal, Wofford claims that there are genuine issues of material fact in regard to whether he was treated worse than similarly-situated whites, because white workers were only fired for far more serious infractions; and that Middletown's supposedly legitimate business reasons are pretexts for his termination based solely on race.

We affirm the decision of the district court. Even drawing all factual inferences in favor of Wofford, he has not demonstrated that he was qualified for his position or that similarly-situated white employees were treated better; and even if Wofford could demonstrate a *prima facie* case. Middletown has presented legitimate, non-discriminatory reasons for his termination, which Wofford has not rebutted.

## I. Facts

Middletown Tube Works, Inc., in Middletown, Ohio, is a manufacturer of steel tubing, and employs approximately seventy-eight persons. Middletown's sole shareholder is Ralph Phillips, who purchased the facility in 1993. The management structure of Middletown is made up almost exclusively of Phillips' immediate family, including his daughter, Angela Phillips, who personally comprises the company's human resources department, and has done so since 1995.

Angela Phillips first brought Wofford to Middletown as a material handler in June 1998. Wofford was a temporary employee at the time, employed by Patrick Staffing. During the second week of September, 1998, Wofford interviewed with Angela Phillips for a permanent position with Middletown. With approval of Middletown supervisors, Angela Phillips hired Wofford as a permanent employee on September 21, 1998.

As a new hire, Wofford was subject to a probationary period. Under § 2.1(A) of the collective bargaining agreement ("CBA") signed between Middletown and the United Steelworkers of America, Local No. 5541, the typical probationary period lasts ninety days for a new hire. Because

Wofford had been a temporary employee prior to being hired permanently, he was only subject to a sixty-day probationary period. Under the CBA, upon the lapse of the probationary period, a new hire becomes a "full-time" employee, and is entitled to more security in his position, and becomes subject to a different, more forgiving, disciplinary system. Specifically, under Middletown's policy, a probationary employee can be fired at the discretion of the employer for absenteeism. Conversely, a "full-time" employee is subject to § 29.2 of the CBA, which employs a "points system." Under the points system, an employee receives, for example, two points for a missed work day without calling (a "no call no show"), and cannot be fired for absenteeism until he reaches ten points.

As part of Wofford's hiring, he was required to complete a physical examination. he did so on October 7, 1998. During that physical examination, Dr. Ken W. Greene observed a bulge and diagnosed Wofford with a hernia. Furthermore, Greene made a note that Wofford had had the bulge for at least two years "after heavy lifting of machine castings." Accordingly, Greene limited Wofford's lifting to thirty pounds "until further evaluation."

As a material handler, Wofford was required to move steel tubing around the facility using a forklift. The job, however, also requires lifting. Material handlers frequently are expected to lift banding tools, which weigh in excess of thirty pounds. Accordingly, Wofford, under doctor's orders, was prohibited from performing the full scope of his job. However, Middletown permitted Wofford to remain on the payroll and perform "light duty" until he could have his hernia repaired.

Wofford's sixty-day probationary period was scheduled to terminate on November 20, 1998. As that date approached, Wofford had not repaired his hernia. Middletown terminated Wofford on November 18, 1998, two days before the end of his probationary period. Angela Phillips asserts that Wofford was fired "[b]ecause he was not able to perform the essential functions of his position. . . ." Accordingly, Wofford did not become a "full-time" employee.

On December 5, 1998, Wofford was re-employed by Middletown. There is nothing in the record to indicate that Wofford re-applied or was interviewed again, but instead appears to have returned under mutual agreement. On December 8, 1998, Wofford, his union representative, and Shayne Lamb, a Middletown supervisor, acting on behalf of Middletown, entered into an agreement, under which Wofford would perpetually remain a probationary employee, regardless of his tenure, "until such time he can provide medical proof of his good physical condition with no limitations."

On December 19, 1998, Wofford did not appear for work. Wofford claims his truck broke down near Toledo, Ohio. He asserts that he was unable to come to work, or to call Middletown directly to inform them, because Middletown would not accept a collect call. Middletown listed Wofford as a "no call no show" indicating that he did not call to notify management that he would be absent that day. Wofford disputes this, and claims that his girlfriend called Middletown for him, which is permitted under the "rule of reason" in § 29 of the CBA, which expressly allows others to call in for an employee when it is not reasonable for the employee to do so.

On January 6, 1999, Wofford was terminated. As reason for his firing, Middletown cites the December 19, 1998, "no call no show," as well as a decrease in Wofford's production. Wofford obtained a "right to sue" letter from the Equal Employment Opportunity Commission on

March 28, 2000, and filed suit on June 15, 2000, claiming racial discrimination in employment. The district court granted summary judgment for Middletown on October 12, 2001, holding that Wofford had failed to show a *prima facie* case of discrimination, and failed to show pretext behind Middletown's purported legitimate business reasons for his firing. Wofford filed a notice of appeal with this Court on October 31, 2001. Accordingly, this matter is timely before this Court under Fed. R.App. P. 4(a)(1)(A).

## II. Standard of Review

We review the district court's grant of summary judgment *de novo,* viewing the evidence and drawing all reasonable inferences in favor of Wofford, the nonmoving party. *See, e.g., Mahon v. Crowell,* 295 F.3d 585, 588 (6th Cir.2002); *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1112–13 (6th Cir.2001).

## III. Analysis

Under both Title VII and Ohio law, Wofford can prove his case by showing either a *prima facie* case or direct evidence of racial discrimination. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 580–81 (6th Cir. 1992); *Kohmescher v. Kroger Co.,* 61 Ohio St.3d 501, 575 N.E.2d 439, 442–43 (Ohio 1991). Direct evidence generally requires unmistakable verbal assertions that the employee was treated adversely because of his race. *See Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998). Wofford admits that no Middletown employee has ever made a racially motivated remark toward him or in front of him. Hence, he has failed to demonstrate any direct evidence of discrimination.

To show a *prima facie* case of discrimination, Wofford must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for his position; and (4) that he was replaced by a member of a non-protected class, or that similarly-situated members of a non-protected class were treated better than he was. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Mitchell,* 964 F.2d at 582–83.

There is no dispute that Wofford, as a black man, is a member of a protected class. *See, e.g., McDonnell Douglas,* 411 U.S. at 802.

■ Nor is there dispute that Wofford suffered an adverse employment action when he was fired on January 6, 1999. *See Cicero v. Borg–Warner Auto., Inc.,* 280 F.3d 579, 584 (6th Cir.2002). Additionally, Wofford claims that he suffered an adverse employment action in early November 1998, when he did not receive his health insurance card while white workers, who started at the same time, received theirs. Each employee at Middletown becomes vested in the health insurance program at forty-five days. Middletown asserts that the insurance card is merely a tangible manifestation of the employee's health benefits, but does not constitute the benefits themselves. Failure to give Wofford the card does not rise to the level of an adverse employment action unless the underlying benefits were likewise denied. *See, e.g., Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 885–86 (6th Cir.1996) (stating that employee must be deprived of some benefit to have suffered adverse employment action). Wofford asserts that denial of a card does indeed deny him of the underlying benefits, and that we must accept this assertion as fact for purposes of summary judgment. However, although we must view all factual questions in favor of Wofford, we need not do so where he has presented no basis for his factual allegations, and has merely engaged in speculation. *See, e.g., Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477

(6th Cir.1989). Wofford does not know whether he had benefits notwithstanding his lack of a card. He never inquired whether he was nonetheless vested. Accordingly, Wofford has no basis to claim he was denied his health benefits. We therefore treat Wofford's January 6, 1999, termination as the sole adverse employment action in this case.

■ To show a *prima facie* case, Wofford must next show that he was qualified for his position. There is little doubt that Wofford was *not* qualified for his position. Wofford was diagnosed with a hernia, which he never corrected, thus prohibiting him from performing the full scope of his job description. *See, e.g., Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 730 (6th Cir.1999) (stating that employee is qualified only if he can meet employer's "legitimate expectations"). Realistically. Middletown could have dismissed Wofford in October 1998 after learning that he suffered from a pre-existing hernia, and was unable to perform satisfactorily the job of a material handler. Instead. Middletown kept Wofford on, allowing him to perform light duty until such time as he could get his hernia fixed.

■ Although we could end the analysis of Wofford's *prima facie* case by stating that he was not qualified for his position, we will move on to the fourth step of the analysis. Wofford has presented no evidence that a similarly-situated white person was treated better than he was. That is, Wofford has not alleged any instance where a white probationary employee was not fired after a "no call no show." In fact, Wofford has not presented evidence of one instance when any probationary Middletown employee, white or black, was credited with a "no call no show," and was not fired. Wofford instead relies on the argument that four white employees who were terminated by Middletown had committed far more serious offenses, although

he never specifies who those employees, or what those offenses, were. Regardless, even if other white employees were disciplined for far more serious offenses, this evidence sheds no light on how each would have been treated had he committed the same offense as Wofford.

Wofford correctly points out that under § 29.2 of the CBA, he could not have been fired for one "no call no show" had he been a "full-time employee." Hence, he further alleges discrimination because Middletown prevented him from becoming a "full-time" employee at the time when his probationary status would have ended in late November 1998. However, Wofford's argument is inapposite. First, Wofford was terminated in November 1998 because he had not corrected his hernia. Moreover, after he was re-hired in December 1998, Wofford and his union representative both signed a form relinquishing Wofford's right to become a "full-time" employee until he corrected the hernia.

Regardless, even if Wofford had proven his *prima facie* case, the burden shifts to Middletown to establish non-discriminatory reasons for his firing. *See, e.g., Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996). Middletown's burden is one of production, not persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If Middletown meets its burden, then Wofford is given a "full and fair opportunity to demonstrate pretext" and must show that Middletown's purported reasons for firing him were merely masking discriminatory intent. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

Middletown alleges the purported December 19, 1998, "no call no show" as a legitimate business reason for Wofford's termination. Wofford responds by claim-

ing that he had his girlfriend call Middletown that morning to inform Middletown that he would be absent that day. Naturally, Wofford has no way of proving that his girlfriend called, nor anyway of knowing whether she truly did call or had merely told Wofford she had done so.

■ Even assuming, as we must for summary judgment purposes, that Wofford's girlfriend did call Middletown for him that day, this does not establish pretext. Both Lamb and another supervisor, Marvin Phillips – owner Ralph Phillips' nephew – contemporaneously reported Wofford's December 19 absence as "unexcused." In an "Absentee Report," dated December 22, 1998, Lamb reported that Wofford "[a]greed to work (overtime) on Saturday, 12/19/98[, but that Wofford d]id not show up." Marvin Phillips, in a separate "Absentee Report," also filled out on December 22, similarly reported that Wofford "[v]olunteered to work Sat[urday, but d]id not report off." These business records, completed contemporaneously with Wofford's absence, strongly indicate that, even if Wofford's girlfriend had called, her call was either not registered or not relayed to the proper supervisors. Therefore, crediting Wofford with a "no call no show," even if erroneous, was not the result of discrimination, but a breakdown in communication. In any event, these contemporaneous reports indicate that Middletown *believed* it had a legitimate, non-discriminatory, reason for terminating Wofford, and did not fabricate the "no call no show" story after the fact.

In any event, there is evidence in the record that challenges Wofford's assertion that his girlfriend called Middletown. In a written "Employee Warning Notice," presented to Wofford on December 22, Lamb wrote that "[o]n Saturday, 12/19/98, Bobby agreed to work overtime [eight] hours. Bobby did not show up *and did not call* anytime during the shift to let his supervi-

sor know that he would not be coming in." (emphasis added). Wofford signed the bottom of the form and checked a box marked "I agree with the above statements," thereby accepting Lamb's account as fact. There was another box marked "I disagree with the above statements because," which provided room for a written explanation. Wofford did not check this box. Wofford has not presented any reason, such as duress, why he acquiesced to Lamb's statement and signed the form if Lamb's account were not true. In fact, Wofford has not addressed this document at all. Therefore we find that he has failed to properly rebut Middletown's purported legitimate, non-discriminatory, business reason for his termination.

Middletown also cites Wofford's decreased productivity as reason for his termination. In support of this contention, Middletown presents evidence in Wofford's file indicating he was counseled about his lack of productivity. In a document entitled "Bobby Wofford – Reasons for Discharge," Lamb claims that Wofford displayed a "[v]ery noticeable decrease in his work performance," and that it "was brought to [Wofford's] attention on 12/19/99 [;] and from that time[, the] supervisor did not see any major improvement (up to [the] time of discharge)." (emphasis added). Wofford now claims that he was never counseled about poor performance and that this reason was fabricated after the fact. To support this contention, Wofford asserts it would have been impossible for Middletown to have counseled him on December 19, because that was the day he missed work and allegedly did not call. The district court found that this was only a misstatement of the date and not fatal to Middletown's summary judgment motion. First, we agree with Wofford that this document was likely made in preparation of trial and not contemporaneously with his firing. Wofford, Middletown, and the district court all misread the date on the

document. Wofford missed work on December 19, *1998,* and was terminated on January 6, 1999. The document, however, lists December 19, *1999,* as the day Wofford was counseled. Accordingly, we agree that this document was likely made after the fact; it is unlikely that the drafter of the document would have cited the wrong year had the document been produced contemporaneously with Wofford's discharge. Accordingly, this document itself has little evidentiary value.

But that document notwithstanding, there is other support for Middletown's claim that Wofford's performance had decreased, and that he had been counseled about it. Lamb completed a "Separation Notice/ Exit Interview" document on January 6, 1999, contemporaneously with Wofford's termination. In this document, Lamb asserted that Wofford was counseled about his performance on December 22, 1998, a day he was present, and the day he received his written warning for his supposed "no call no show." Wofford has presented no argument against this document. Accordingly, we find that the "Separation Notice/ Exit Interview" document evidences a legitimate, non-discriminatory reason for Wofford's termination, and Wofford has not properly rebutted it.

Lastly, the other facts of this case simply do not support an inference of discrimination, and in fact strongly oppose it. First, Wofford was hired not once, but *twice* by Middletown. After his initial termination in November 1998, Middletown brought him back in December. Wofford downplays his re-hiring and claims that he was brought back because he had complained to the union about discrimination in his first termination, and Middletown feared a lawsuit. There is nothing in the record, and Wofford has provided no evidence, to support this claim. Conversely, Middletown claims that Wofford was brought back because management felt sorry for him, wanted him to have money for Christmas, and had only fired him in the first instance because he was unqualified for the position because he had failed to correct his hernia. The December 8, 1998, agreement signed by Wofford and his union representative upon his re-hiring supports this position because, in that document, Wofford's ability ever to attain "full-time" status was made expressly conditional on Wofford having his hernia fixed. We find incredible the argument that Middletown, having once legally fired Wofford as unqualified, would bring him back only to fire him a month later because of a discriminatory animus.

Second, Shayne Lamb and Angela Phillips were the sole actors involved in Wofford's hiring and termination. Under the "same-actor inference" employed in discrimination cases, the fact that the same person or group of people did both the hiring and firing over a short time frame is strong evidence that there was no discrimination involved in the later termination. *See Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 572 (6th Cir.2003) (en banc); *Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 463 (6th Cir.1995). We find that doctrine applicable to this case. If Lamb and Phillips had despised Wofford because of the color of his skin, it seems odd that they would have hired him in the first instance only to fire him a few short months later.

Lastly, Lamb, the supervisor who personally fired Wofford in January, had also personally endeavored to collect money on Wofford's behalf from other Middletown employees, *twice.* Lamb did this once, in October, when Wofford's mother died and Wofford lacked funds to travel to her funeral; and again, when Wofford was supposedly trying to raise money for his hernia surgery in December. These are not the acts of a man with a discriminatory intent.

Accordingly, we affirm the decision of the district court. We find that Wofford has failed to establish his *prima facie* case because he has not demonstrated that he was qualified for his position, or that similarly-situated white employees were treated better. Moreover, even if he had shown a *prima facie* case of discrimination. Middletown has sufficiently demonstrated that there were legitimate, non-discriminatory reasons behind Wofford's termination; and Wofford has not rebutted these reasons by showing that they were pretextual.

### IV. Conclusion

For the foregoing reasons, we **AFFIRM** the decision of the district court.