NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1288n.06

No. 11-3744

**FILED**
*Dec 13, 2012*
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JOSEPH GAGLIOTI, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| LEVIN GROUP, INC. | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellee.* | ) | |

BEFORE:    BATCHELDER, Chief Judge, COLE, Circuit Judge, and ROSEN, Chief District Judge.[*]

COLE, Circuit Judge.  Joseph Gaglioti was hired by the Levin Group, Inc. ("Levin Group") at the age of 62 to work in the accounting department.  Ten months later, he was fired.  While initially claiming that Gaglioti was fired because his temporary employment had come to an end, Levin Group also eventually argued that it was Gaglioti's poor performance that resulted in his termination.  Gaglioti sued, arguing that his employment was terminated for two reasons: his age, and the fact that his wife had significant medical problems which would result in increased medical insurance costs for Levin Group.  The district court granted summary judgment to Levin Group on all of Gaglioti's claims.  For the reasons set forth below, we AFFIRM the grant of summary

---

[*]The Honorable Gerald E. Rosen, Chief Judge of the United States District Court for the Eastern District of Michigan, sitting by designation.

judgment on the disability discrimination and ERISA claims, REVERSE on the age discrimination

claim, and REMAND for further proceedings consistent with this opinion.

## I.  BACKGROUND

Prior to 2005, Joseph Gaglioti was employed by Cole National, Inc., as its Vice President and

Treasurer.  This position was the culmination of a long career in the accounting and corporate

finance field.  His position at Cole National was eliminated in 2005 when the company was acquired

by another corporation.  As a result, Gaglioti received a severance package which included three

years of medical insurance coverage.  That coverage was crucial to Gaglioti, as his wife suffers from

significant medical problems, including severe arthritis that limits her mobility.

In 2008, with his severance benefits expiring, Gaglioti met Mort Levin ("Levin"), the

President of Levin Group, at a social event.  The Levin Group is a real estate entity that manages

government-subsidized housing projects.  Gaglioti and Levin discussed a potential position with

Levin Group.  This led to a job interview and an offer of a position as a staff accountant with the

company.  A key portion of the job was to help Levin Group address some immediate projects and

priorities, including some portions of the business that were in arrears.  While Levin and the

Comptroller of Levin Group, Ralph Pursley, maintain that the position was always intended to be

temporary and limited to the immediate projects, it is undisputed that Gaglioti was hired with full

benefits.  As part of his initial paperwork, Gaglioti filled out a medical insurance form which

disclosed his wife's condition.

In July 2009, Gaglioti, along with all other Levin Group employees, filled out a new medical

history form in connection with Levin Group's renewal of its medical insurance plan.  In that form,

Gaglioti disclosed information relating to his wife's medical condition. The form was given to Pursley's assistant, though both Pursley and Levin testified that they never saw it.

In August 2009, Gaglioti was informed that he would be terminated at the end of the month. The reason offered by Pursley was that Gaglioti was always a temporary employee, and that there was a lack of work for him to do. This understanding was confirmed by Levin in an email to Gaglioti. In addition to arguing that Gaglioti was a temporary employee, Levin testified in his deposition that Gaglioti's work was poor, and that Levin had decided to fire Gaglioti in "early 2009." However, Gaglioti never received any complaints about his performance, nor does the record reflect any negative evaluations.[1]

Gaglioti filed this action in state court, which was removed to the United States District Court for the Northern District of Ohio. In his complaint, he asserts four causes of action related to his termination: (1) age discrimination in violation of Ohio R.C. § 4112.02; (2) discrimination based on association with a disabled person in violation of Ohio R.C. § 4112.02; (3) discrimination based on association with a disabled person in violation of the Americans with Disabilities Act ("ADA"), 42

---

[1] There is, however, evidence in the record of dissatisfaction with Gaglioti's work performance. Craig Tellerd, Levin Group's accountant/tax advisor, testified in his deposition that he told Mort Levin and Ralph Pursley that Gaglioti's work was unsatisfactory and that he had "ask[ed] that [Gaglioti] be removed from the work he was doing for me" because his work "wasn't satisfactory, it was slowing me down", and caused difficulty in meeting "the deadline that was assigned to the tax returns." Furthermore, Gaglioti's claim that he never received any complaints about his performance is not borne out in the record. Gaglioti admitted in his deposition that he was not timely in getting the work done for Tellerd and further testified that Tellerd expressed his dissatisfaction with his work product when he finally received it. ("[Tellerd] went ballistic, was very upset.")

U.S.C. § 12112 et seq.; and (4) interference with employee benefits guaranteed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 et seq.

The district court found that Gaglioti made out a prima facie case on the age discrimination, ADA, and ERISA claims, but held that Levin Group proffered legitimate, nondiscriminatory reasons for Gaglioti's termination, and that Gaglioti had not demonstrated those reasons to be pretextual. In addition, the district court held that Gaglioti's association discrimination claim was not cognizable under Ohio law. As such, the district court granted summary judgment to Levin Group on all claims. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

A grant of summary judgment is reviewed de novo. *Wasek v. Arrow Energy Srvs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012). All evidence in the case is viewed in the light most favorable to the non-moving party—in this case Gaglioti—and all reasonable inferences must be drawn in favor of the plaintiff's claim. *Id.* A court may only grant summary judgment to the defendant where "there is no genuine issue of material fact," which is defined as a lack of evidence "'such that [no] reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

All of Gaglioti's claims are analyzed through the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must put forward a prima facie case of discrimination under the relevant statute. *See Mauzy v. Kelly Srvs., Inc.*, 664 N.E.2d 1272, 1276 (Ohio 1996) (quoting *Barker v. Scovill*, 451 N.E.2d 807, 809 (Ohio

1983)) (age discrimination under Ohio R.C. § 4112.02); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992) (ERISA interference claim); *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (ADA claim). Once this is done, the burden of production shifts to the employer to articulate legitimate, non-discriminatory reasons for the challenged action. *Mauzy*, 664 N.E.2d at 1276; *Humphreys*, 966 F.2d at 1043. If the employer articulates such non-discriminatory reasons,

> "the burden shifts back to Plaintiff 'to *prove by a preponderance of the evidence* that
> the legitimate reasons offered by the defendant were not its true reasons, but were a
> pretext for discrimination.' Plaintiff may establish that Defendants' proffered reason
> is mere pretext by establishing that it: (1) has no basis in fact; (2) did not actually
> motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's
> termination."

*Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 414 (2007)) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)) (emphasis in original). On this last prong, the plaintiff's burden "is to produce sufficient evidence from which a jury may reasonably reject the employer's explanation" and infer discrimination. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012) (internal punctuation and citations omitted).

B.  *Age Discrimination under Ohio R.C. § 4112*

   1.  *Prima Facie Case*

The district court found that Gaglioti made out a prima facie case of age discrimination under Ohio R.C. § 4112, which requires that the "plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class." *Mauzy*, 664 N.E.2d at 1276 (quoting *Barker*, 451 N.E.2d at 809).  Levin Group concedes that Gaglioti was a member of a protected class (as he was 63 at the time of his termination), and that he was discharged.

Levin Group contends that the district court erred in finding that Gaglioti was qualified for the job, since (in the Levin Group's view) Gaglioti was not able to carry out his job functions in a satisfactory manner.  This argument impermissibly conflates the non-discriminatory reasons for termination with the qualifications for the job.  *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.")  Instead, the standard for determining whether an employee is qualified for a position is whether the plaintiff "present[s] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc).  The district court, properly, found that Gaglioti had over forty years of accounting experience, well beyond the one to three years listed

by Levin Group in its classified advertisement. Therefore, the district court is correct that Gaglioti made out a prima facie case of discrimination.

Levin Group also contends that Gaglioti was not replaced by a non-protected employee. The district court found that Levin Group retained two younger staff accountants, Lori Tibbets and Deleah Williams in a permanent role. Levin Group argues that these employees were not similarly situated with Gaglioti, as Gaglioti was a temporary employee and the company had already decided to terminate Gaglioti when they were hired. Again, this rationale requires one to accept Levin Group's proffered non-discriminatory reasons for Gaglioti's termination, which is inappropriate at the prima face stage. The district court was correct to find that the retention of two younger accountants while Gaglioti was terminated is sufficient for Gaglioti to meet his modest burden of proving a prima face case of discrimination.

### 2. Non-Discriminatory Reasons/ Pretext

Levin Group offered three non-discriminatory reasons for terminating Gaglioti. First, Levin Group argues that Gaglioti's position was always intended to be temporary, and Gaglioti was terminated once his temporary assignment was completed. In a related argument, Levin Group asserts that there was no work remaining for Gaglioti to do for the company, and as such his termination represents a downsizing of accounting operations. Finally, Levin Group argues that Gaglioti's performance was deficient and resulted in his termination.

Gaglioti's pretext argument proceeds on two separate tracks. First, Gaglioti argues that each of these three reasons were asserted by Levin Group at different points as the sole reason for his termination. In other words, Gaglioti asserts that Levin Group has changed its reasons for firing him

during the course of this litigation. Sixth Circuit case law is clear that "[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996); *see also Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713 (6th Cir. 2007) (quoting *Id.*). A close reading of the record suggests, however, that it was not so much that Levin Group changed its story as it supplemented it. In the email responding to Gaglioti's claim that his termination was improper, Levin focuses exclusively on the temporary nature of the position. Similarly, the affidavit Levin filed in response to the EEOC complaint makes no mention of any performance-related problems, and instead only discusses the lack of further need for Gaglioti's services. However, in its motion for summary judgment, Levin Group argues that the combination of poor performance and temporary employment status were responsible for Gaglioti's termination. While it is certainly suspicious that the performance issue does not come up until well into the litigation, Levin Group never abandons the idea that Gaglioti was a temporary employee—in fact, the company still argues it on appeal. So it is not accurate to say that Levin Group changed its position over the course of the litigation. Thus, the moving-target nature of Levin Group's explanation for the firing, while perhaps casting a pall of suspicion over its actions, is not enough by itself to create a disputed issue of material fact.

However, Gaglioti's second argument is meritorious, as there is sufficient evidence in the record to create a dispute of material fact over each of the proffered justifications, taken individually, for Gaglioti's termination.

First, the argument that Gaglioti was a temporary employee is belied by Levin Group's own employee manual. The manual defines a "temporary employee" to be one that, among other criteria,

receives no benefits. It is undisputed that Gaglioti received health insurance benefits as part of his employment by Levin Group—otherwise, he never would have received the health history form that is at the heart of the ERISA and ADA claims. So, by Levin Group's own definition, Gaglioti was not a "temporary employee." Indeed, Mort Levin testified that he understood Gaglioti to be a full-time employee as provided for in the handbook. Levin Group's response in essence is that, while Gaglioti may have been a permanent employee in a technical sense, he was a temporary employee in the sense that the company never planned to keep him beyond the end of the job duties he was assigned. While this is plausible, coupled with the *prima facie* evidence of Levin Group's retention of two younger employees who were hired after Gaglioti, a reasonable juror could conclude that this "temporary employee" justification was crafted post hoc by Levin and Pursley to cover an improper reason for firing him. If Levin and Pursley did view Gaglioti as a temporary employee, it is undisputed that they did not explicitly communicate this understanding to Gaglioti until his termination. The idea, referenced in the termination email, that Gaglioti was informed orally from the beginning that his employment was temporary is not supported anywhere in the record beyond the testimony of Pursley and Levin.

More fundamentally, to survive summary judgment, Gaglioti is not required to disprove the contention that his employers always viewed him as a temporary employee to—he simply has to show that it would be reasonable for a juror not to believe Levin Group's claim. The discrepancy between Gaglioti's official job classification and Levin Group's purported understanding of his role is a reason to doubt Levin Group's account, particularly when the only evidence to support this

explanation is the potentially self-serving testimony of Levin and Pursley. Gaglioti has created a disputed issue of material fact on whether he was a temporary employee.

Similar inconsistencies plague Levin Group's argument that there was no more work for him to do once his initial projects were completed. Pursley, in his deposition, stated that he would have retained Gaglioti if there had been work him to do. However, Pursley also testified that the accounting department was larger as of the time of his deposition than it was when Gaglioti was hired, having grown from three staff accountants to four. The logical inference from this fact is that there was more work in Gaglioti's department at the time of his termination, not less. Again, the question is not whether there are ways to square these two facts, but whether a juror could reasonably conclude that this inconsistency is enough to discredit Levin Group's account. A juror could see two incompatible versions of the amount of work needed by the company, and conclude that this justification is pretextual.

The argument that Gaglioti's work performance was poor suffers from similar problems. Although, as noted, there is evidence in the record of dissatisfaction with Gagalioti's work, there is the fact that this justification was never raised by Levin Group until well into the litigation—as discussed above, the initial emails and case filings deal exclusively with the temporary employee/lack of work justification. While this fact may not be enough to show a changing rationale, it would allow the jury to view the performance argument as a litigation strategy, as opposed to the real reason for the action. *See Tyler v. Re/Max Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir.2000) ("We are disquieted. . . . by an employer who 'fully' articulates its reasons for the first time months after the decision was made."); see also *EEOC v. Sears Roebuck & Co.*, 243

F.3d 846, 853 (4th Cir. 2001) (finding pretext where the non-discriminatory reason for not hiring the plaintiff emerged only after the beginning of litigation). This is potentially enough for a jury to discount this argument. Moreover, it is undisputed that there is no documentary evidence, such as a personal record or evaluation, that substantiates that Gaglioti's performance was deficient. This buttresses the possibility that poor performance was a post hoc creation by Levin Group.

Finally, the deposition testimony of the two key players—Levin and Pursley—is contradictory on whether unsatisfactory performance was the real reason for Gaglioti's termination. Levin states emphatically that performance was the reason for Gaglioti's termination. ("Q: Is it your testimony on behalf of the defendant, and from your vantage point, that Joe Gaglioti was terminated for work performance? A: Yes.") Pursley, however, states that work performance "didn't have anything to do with why he was fired," relying instead on the lack-of-work justifications. Inconsistent reasons given by key decision-makers as to the reason for the firing can provide evidence of pretext. *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997) ("The inconsistency of these statements by the different managers . . . creates [an important] question[] of material fact . . . what was the reason that caused that decision maker to decide that Tinker should be fired?"). Any one of these issues, or all of them in combination, provide a jury with a basis to conclude that poor performance was a pretextual justification for Gaglioti's firing.

    *3. "Same Actor" Inference*

As an alternative holding, the district court determined that Gaglioti's R.C. § 4112 claim (and the ADA claim as well) is barred by the "same actor" inference. The "same actor" inference "allows one to infer a lack of discrimination from the fact that the same individual both hired and

fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). The en banc court clarified the scope of the inference, "reject[ing] the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual." *Wexler*, 317 F.3d at 573. Instead, the court stated "[w]e therefore specifically hold that where, as in this case, the fact finder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact." *Id.* at 573-74.

The district court points to unpublished cases where the same actor inference has been applied where there is no direct evidence of discrimination. *Mischer v. Erie Metro Housing Author.*, 168 F.App'x 709, 717 (6th Cir. 2006); *Wofford v. Middletown Tube Works, Inc.*, 67 F.App'x 312, 318 (6th Cir. 2003). This conflates the questions of when to apply the same actor inference and what weight to give the inference. It is entirely possible that the same-actor inference is applicable to this case, and that a same-actor jury instruction will be appropriate. But, as *Wexler* makes clear, the same-actor inference cannot be an independent reason to grant summary judgment where there are other disputes of material fact. For the reasons discussed above, there are disputes of material fact regarding Levin's proffered reasons for firing Gaglioti. As such, while the same-actor inference may be applicable to this case at trial, it is not applicable to this case on summary judgment.

## C. *Prima Facie Case Under the ADA*

The district court analyzed the prima facie case of disability discrimination under the ADA offered by Gaglioti under a four-part test, where the plaintiff must show: "(1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the

employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011). The district court found that Gaglioti made out a prima facie case of association discrimination, holding that the temporal proximity between the submission of Gaglioti's insurance form and his termination raised an inference that Gaglioti was terminated for the purpose of reducing health care costs. *See also Larimer v. IBM Corp.*, 370 F.3d 698, 700 (7th Cir. 2004) (articulating the "expense" theory of association discrimination); *Stansberry*, 651 F.3d at 487 (citing *Larimer*).

Levin Group concedes that there was an adverse employment action, but argues on appeal that Gaglioti can meet none of the other three prongs. On the qualification prong, Levin Group reasserts that Gaglioti was not qualified for the position due to his inability to properly do the job. As discussed above, however, the qualification prong turns on the objective qualities of the applicant, not on a subjective belief on the part of the employer that the work product was deficient. Thus, as with his age discrimination claim, the district court was correct to find that Gaglioti was "qualified" for purposes of his ADA claim.

Levin Group also asserts that the key decision-makers, Levin and Pursley, were not aware that Gaglioti's wife was disabled. Gaglioti argues that Levin saw that his wife was disabled at the initial meeting at the cocktail party that led to the job offer. Gaglioti also asserts that he spoke to Pursley informally on numerous occasions about his wife's medical problems. Finally, it is undisputed that Gaglioti submitted two medical insurance forms to Levin Group—once at his initial

hiring, and once in July 2009. While Pursley disputes that he reviewed the insurance forms prior to

Gaglioti's termination, taking the facts in the light most favorable to Gaglioti, there is enough

evidence in the record to find that the key Levin Group decision-makers were aware of the condition

of Gaglioti's wife.

However, the evidence does not support an inference that Gaglioti's termination was related

to his wife's disability. The district court relied on the temporal connection between Gaglioti's

submission of the July 2009 insurance form and his termination as the basis for the inference of

discrimination. Yet, it is undisputed that the insurance form Gaglioti provided at the time of his

initial hire contained the same basic information as the form he submitted in July 2009. In other

words, the July 2009 insurance form—the only event close in time to Gaglioti's termination—added

nothing new, and thus cannot be the basis for an inference of discrimination. *See Stansberry*, 651

F.3d at 488 ("Because Air Wisconsin knew of her disability for a long period of time, this undercuts

the inference that Stansberry's termination was based on . . . his wife's disability. . . .")

Gaglioti argues that the July 2009 form was significant because it came in an environment

where Pursley was seeking to cut costs, and thus the later form influenced the firing decision in a

way the former did not. While it is true that Levin Group's medical insurance was up for renewal,

and that Gaglioti's wife was a high-risk beneficiary, Gaglioti has not put forth any evidence that

Levin or Pursley were concerned about the cost of Gaglioti's wife's coverage. The district court

found that "Pursley and Levin never had a conversation with other employees or Plaintiff that the

company was concerned with health care costs." Moreover, Levin Group's insurance broker, Shelley

Chornak, testified that she never discussed Gaglioti's situation with anyone associated with Levin

Group.  The few prior cases in this circuit dealing with the "expense" theory of association discrimination all require some showing that the potential medical expenses of the fired employee were on the minds of the decision maker at the time of the termination.  *Compare White v. Carmeuse Lime & Stone*, *Inc.,* No. 2:09-cv-265, 2011 WL 3585064, at * 8 (W.D. Mich. May 31, 2011) ("In short, no evidence is found in the record to show that Himes, Mickelson, Tunnicliffe, or any other Carmeuse managers were aware of the amount of [Plaintiff's daughter's] healthcare expenses or health care claims, or that they were in any respect concerned about those expenses.") *with Lyons v. Core Systems, LLC*, No. 2:10-cv-75, 2011 WL 4402777, at *15 (S.D. Ohio September 21, 2011) ("Lyons argues that the Core Systems' management employee's repeated statements about the high cost of health care at Mt. Gilead raise a reasonable inference that Core Systems fired Lyons because his wife's disability was too expensive.  This fact may be sufficient to shift the burden to Core Systems to offer a legitimate reason for the termination . . . ."); *see also Stansberry*, 651 F.3d at 488 ("A plaintiff cannot bypass the prima facie showing requirement and must offer some evidence to suggest that the adverse employment action he or she suffered was due in some measure to discriminatory animus. . . ."). There is no evidence, beyond Gaglioti's allegations, that Gaglioti's wife's medical expenses were on the minds of Levin or Pursley.

Gaglioti cannot make out a prima face case of association discrimination under the ADA. As we may affirm a grant of summary judgment "on any grounds supported by the record," *Pahssen*

*v. Merrill Comm. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012), we affirm the district court's grant

of summary judgment as to the ADA claim[2].

## D. Prima Facie Case of ERISA Interference

To make out a claim of interference with benefits guaranteed under ERISA, the plaintiff must

show "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the

attainment of any right to which the employee may become entitled." *Humphreys*, 996 F.2d at 1043.

The district court found that Gaglioti met his prima facie case, relying on the temporal proximity

between the firing and the submission of the insurance questionnaire (which, at least potentially,

could have led to significantly greater health insurance costs) to provide an inference of improper

employer conduct. However, in order to make out a prima face case of ERISA interference, the

Plaintiff must allege that the employer "had a specific intent to violate ERISA." *Id.* (quoting *Rush*

*v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991)) (internal quotation

marks omitted). Unlike with the age discrimination and ADA claims, where inferences of

discrimination are sufficient to meet the burden at the prima face stage, Gaglioti must point to

specific evidence that shows that the desire to reduce medical costs motivated his termination. No

such evidence exists in the record. As mentioned previously, the district court found that "Pursley

---

[2] Gaglioti also raised an association discrimination claim under Ohio R.C. § 4112.02(A). The district court granted summary judgment on this claim, holding that the statute does not provide for an association claim. Assuming *arguendo* that the statute does provide this cause of action, *see Cole v. Seafare Enterp. Ltd., Inc.*, No. C-950157, 1996 WL 60970, at *2 (Ohio Ct. App. Feb. 14, 1996), any claim under R.C. § 4112.02(A) would face the same difficulties at the prima face stage as the ADA claim. Therefore, we affirm the grant of summary judgment as to that claim on the merits, and take no position on whether R.C. § 4112.02(A) applies to association discrimination claims.

and Levin never had a conversation with other employees or Plaintiff that the company was concerned with health care costs." Thus, Gaglioti's claim that he was fired in response to the fear of higher health care costs is entirely inferential, and not sufficiently supported by specific evidence to make out a prima facie case of ERISA interference. Therefore, we also affirm the grant of summary judgment to Levin Group on Gaglioti's ERISA interference claim.

## III. CONCLUSION

We AFFIRM the grant of summary judgment as to the disability discrimination and ERISA interference claims, REVERSE the grant of summary judgment as to the age discrimination claim, and REMAND for further proceedings consistent with this opinion.