NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0774n.06

Case No. 15-1020

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Nov 25, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CARMEN GARRETT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| SOUTHWESTERN MEDICAL CLINIC, | ) | MICHIGAN |
| LAKELAND REGIONAL HEALTH | ) | |
| SYSTEM, and LAKELAND MEDICAL | ) | |
| PRACTICES | ) | |
| | ) | |
| Defendant-Appellee. | | |

BEFORE: ROGERS and DONALD, Circuit Judges; ROSE, District Judge.[*]

**OVERVIEW**

**BERNICE BOUIE DONALD, Circuit Judge.** Appellant Carmen Garrett ("Garrett") appeals the district court's grant of summary judgment on her claim that her employer fired her because of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981a, 42 U.S.C. § 1981, and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et. seq. This appeal effectively raises four issues: (1) whether the district court erred in concluding that Garrett had to introduce additional evidence to prove that the asserted

---

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

reason for firing her was pretextual beyond what it considered in evaluating her prima facie case, (2) whether the district court erred in applying the "same actor" inference at the summary judgment stage, (3) whether the district court erred in refusing to admit a statement into evidence on hearsay grounds, and (4) whether the district court correctly held that a rational jury could not find that Garrett would carry her burden at trial. For the reasons set out below, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

A. Garrett's Employment History

Southwestern Medical Clinic ("Southwestern") hired Garrett as an x-ray technician in November 2008.[1] Marilyn Hurrle managed the enterprise and hired Garrett after she and Virginia Walker, a human resources representative, interviewed her.

Garrett alleges several instances of discriminatory treatment. First, Garrett alleges that Hurrle changed her shift times in November 2011 to prevent her from carpooling with Cicely Maben ("Maben"), a black co-worker whose case we recently decided, *Maben v. Sw. Medical Clinic.*, No. 15-1101 2015 WL 6719158 (6th Cir. Nov. 4. 2015). Second, Garrett alleges that Hurrle told a white co-worker, Lisa Doolen ("Doolen") that she had to separate Garrett and Maben because "two inappropriate blacks shouldn't be working together." Third, Garrett alleges that she was assigned cleaning jobs more often than white co-workers.

Southwestern alleges that Garrett failed to disclose the fact that Lakeland—which acquired Southwestern— previously fired her for sleeping on the job and that another employer fired her for time card fraud on her job application. Southwestern further alleged that Garrett had several issues over the years for which it reprimanded and counseled her. For example,

---

[1] Lakeland Regional Heath System and Lakeland Medical Practices (collectively "Lakeland") acquired Southwestern in February of 2010.

Garrett was rude to a patient after driving that same patient's wheelchair through a wall. In addition, Southwestern alleged that Garrett incorrectly processed x-ray films, repeatedly failed to report for work on time, failed to keep her workspace clean, failed to "punch in and out" of work, used improper telephone etiquette, and consumed alcohol on the job. These various issues caused Garrett to accumulate five verbal warnings, a written warning, and a written warning with a three-day suspension before her termination. However, a 2011 performance review described Garrett as "a solid performer," while noting that she fell short of Southwestern's "five star behaviors."

One incident from April 2012 appears particularly important to both parties. Hurrle received two anonymous letters informing her about the unauthorized release of private medical information. Both Garrett and Doolen admitted leaving their computers and/or passwords unsecured, which could have allowed someone else access. This led to both Garrett and Doolen receiving a written warning and three-day suspension. Less than two weeks after the suspension, Garrett agreed to cover for a co-worker. However, Garrett says she forgot and when Southwestern called, she immediately drove into work, arriving 17 minutes late. Southwestern alleges that Garrett promised to cover for another co-worker and similarly failed to show up on time on a separate occasion during that time period. On June 13, 2012, Hurrle terminated Garrett. The termination notice explicitly listed "failure to show up for work" as the reason for firing. Hurrle later indicated that Garrett's tardiness after agreeing to cover for a co-worker was merely the last straw.

For her part, Garrett alleged that Hurrle treated white co-workers who had similar issues less harshly. The district court found that two of the co-workers were sufficiently "similarly

situated" to allow Garrett to make out a prima facie case of discrimination. We include both here:

i.      Mellanie Gardiner

The district court found that Gardiner accumulated seven absences before receiving written notice of the attendance policy, even though she was eligible for a suspension per Southwestern policy. Although Hurrle told her that another absence would result in a suspension, Gardiner accumulated 14-15 more absences before receiving a three-day suspension.

In addition, she received verbal warnings for lab errors and let her medical certification expire, although she assured Southwestern that she was current on all necessary certifications. Gardiner eventually quit, and Hurrle asserted that she had been progressing towards termination.

ii.     Shanna Damouth

The district court found that Damouth had 37 tardies to work in a nine-month period between October 31, 2011 and July 31, 2012, which equals 12 absences under Southwestern policy. Southwestern policy allowed it to terminate an employee with eight absences. Hurrle first provided a written notice of the company's attendance policy on December 21, 2011, and then later a written warning with three day suspension in July 2012. After the suspension, Gardiner had 12 more absences (taking into account actual absences and tardies).

In a February 2012 performance review, Hurrle counseled Damouth for attitude, attendance issues, and lab errors (such as drawing blood from an arm while an IV was running). A November 2012 performance review faulted her for again drawing blood while an IV was running. Damouth also accessed the information that was unlawfully released, but Southwestern asserts that Damouth had a legitimate reason to access the files because she was working with

the patients. After Damouth failed to show up for work in September 2013, Southwestern terminated her.

### B. Equal Employment Opportunity Commission Proceedings

On October 9, 2012, Garrett filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination on the part of Southwestern. In her complaint, Garrett said that she was written up for an absence incurred because she was taking her child to the hospital; she later admitted that this allegation was false. The EEOC could not determine whether any anti-discrimination statutes were violated, or for that matter, whether Southwestern was in compliance with all anti-discrimination statutes.

### C. District Court Proceedings

Subsequently, Garrett brought suit in the United States District Court for the Western District of Michigan. The district court granted summary judgment to Southwestern on December 19, 2014. In evaluating the motion, the court treated Garrett's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981a, 42 U.S.C. § 1981 and the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 et. seq. the same.

Because Garrett did not have direct evidence of discrimination, the district court applied the McDonnell-Douglas framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Initially, the plaintiff must make out a prima facie case that racial discrimination occurred. To do so, the plaintiff must show that she (1) was a member of a protected class, (2) suffered an adverse employment outcome, (3) was qualified for the position, and (4) was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting DiCarlo v Potter, 358 F.3d 408, 415 (6th Cir. 20040).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the negative employment outcome. Then the burden shifts back to the plaintiff to prove that the explanation provided for the adverse employment outcome is pretextual. *Id.* at 706-07. A plaintiff can prove pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's decision to impose adverse employment consequences, or (3) was insufficient to warrant the employer's response. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002) (quoting Dews v. AB Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000)).

The district court found that Garrett made out a sufficient prima facie case to survive summary judgment. However it also concluded that Southwestern had a legitimate non-discriminatory rationale for the firing and that Garrett would be unable to prove that explanation was pretextual at trial. Therefore, the district court granted summary judgment. All of the issues raised in this appeal concern whether Garrett could prove that Southwestern's rationale for firing her was a pretext for discrimination.

## I.    JURISDICTION

Both parties agree that jurisdiction is appropriate. The district court had jurisdiction over the Title VII and 42 U.S.C. § 1981 claims under federal question jurisdiction. 28 U.S.C. § 1331. The district court had supplemental jurisdiction of the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 claim because it was related to the federal civil rights claims. 28 U.S.C. §1367(a). This Court has jurisdiction under 28 U.S.C. § 1291 because Garrett timely filed a notice of appeal on January 5, 2015, and the order granting summary judgment came on December 19, 2014. Fed. R. App. P. 4.

## II.    STANDARD OF REVIEW

This Court reviews grants of summary judgment de novo.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 569 (6th Cir. 2003) (en banc).  We will uphold granting a motion for summary judgment when there is no genuine dispute of material fact and judgment is appropriate as a matter of law.  Fed R. Civ. P. 56.  In evaluating a motion for summary judgment, this Court must consider the record as a whole—while making all legitimate inferences in favor of the non-moving party—and decide whether the record allows a reasonable jury to conclude that the plaintiff would meet her burden at trial.  *Agristar Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992).

## III.    ANALYSIS

On appeal, Garrett offers four reasons for reversing the district court's grant of summary judgment: (1) the district court erred in concluding that Garrett had to introduce additional evidence to prove that the asserted reason for firing her was pretextual beyond what it considered in evaluating her prima facie case, (2) the district court erred in applying the "same actor" inference at the summary judgment stage, (3) the district court erred in refusing to admit a statement into evidence on hearsay grounds, and (4) the district court erred in holding that a rational jury could not find that Garrett would carry her burden at trial. We consider each argument separately.

A. Did the district court err in considering Garrett's comparison evidence in the prima facie case, but not to prove pretext?

In its decision, the district court decided that after considering Gardiner and Damouth in the light most favorable to the plaintiff, they were sufficiently similarly situated that Garrett could establish a prima facie case.  However, the district court later refused to consider evidence

of Gardiner and Damouth's conduct in deciding whether Southwestern's explanation for Garrett's termination was pretextual.

Garrett did not argue that Southwestern's explanation was factually false, or even that her conduct could not warrant termination, so she needed to prove that the explanation given was a cover-up for discrimination. Since Garrett admitted the conduct that Southwestern cited in its rationale to fire her, the district court held that she needed evidence beyond what she introduced when establishing her prima facie case. *Id.* at 14, ("[w]hen a plaintiff admits the factual bases of the employer's reason for terminating her, she must introduce evidence beyond her prima facie case to show pretext" (quoting *Haughton v. Orchid Automation*, 206 F. App'x 524, 533 (6th Cir. 2006)).

This was erroneous. Although one can plausibly read *Haughton* to mean that a plaintiff must introduce different evidence to prove pretext than she used to establish a prima facie case, we decline to embrace such an interpretation because it is precluded by *Reeves v. Sanderson, Plumbing Products*, 530 U.S. 133 (2000), in which the Supreme Court rejected "the premise that a plaintiff must always introduce additional, independent evidence of discrimination" beyond that presented in his or her prima facie case in order to prove pretext. *Id.* at 149. A "pretext plus" requirement could produce unjust results. In this case, assume that Garrett's sole evidence of racism was to find ten white employees guilty of the exact same misconduct she was and that further, they received no sanctions from Southwestern. Assuming Garrett introduced these ten employees to make a prima facie case, she would *have* to lose a motion for summary judgment because she does not have additional evidence to prove pretext. However, a case where ten white employees did the exact same things a minority employee did, yet received more lenient treatment, is one where a reasonable jury could find that discrimination was the employer's real

reason for firing. Instead, we read *Haughton* to say that the plaintiff's prima facie evidence alone will not always be adequate to prove pretext. Evidence produced in support of a plaintiff's prima facie case "may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 533 (6th Cir. 2007). In making a prima facie case, the plaintiff's evidence must make an allegation that she was treated worse than white co-workers merely plausible.

The district court therefore erred, but because the record as a whole presents insufficient evidence to justify a jury verdict in Garrett's favor, this error does not merit reversal.

A. Should the "same actor" inference apply at the summary judgment stage?

In its decision, the district court applied the "same actor" inference. This was permissible under circuit precedent. Courts sometimes choose to apply the "same actor" inference when the same person who hired the plaintiff also fired the plaintiff. In such cases, a presumption can arise that an employee's race did not motivate the termination because the sort of person who would discriminate against a particular race would not also hire someone of that race. *See Wofford v. Middletown Tube Works, Inc.*, 67 F. App'x 312, 318 (6th Cir. 2003). In this case, the district court found that Hurrle was the same person who hired and fired Garrett. It then held that the "same actor" inference weakened Garrett's case that discrimination occurred.

The main case on point here is *Wexler*. Garrett claims that *Wexler* prevents district courts in this circuit from applying the "same actor" inference on motions for summary judgment. However, *Wexler* expressly contemplated district courts applying the "same actor" inference at the summary judgment stage. 317 F.3d at 573 ("[A]lthough the factfinder is permitted to draw this inference, it is by no means a mandatory one, and it may be weakened by other evidence."). Notably, *Wexler* overruled an earlier panel decision in the same case that found that the "same

actor" inference was a strong one. *Wexler v. White's Fine Furniture Inc.*, 246 F.3d 856, 866 (6th Cir. 2001). That suggests that if a district court applies the "same actor" inference in this circuit now, its import must be relatively modest. Here, the district court appears to have accorded the same actor inference modest weight overall. *Garrett v. Sw. Med. Clinic PC, Lakeland Regional Health Sys. and Lakeland Med. Practice*, 2014 WL 7330947, at *12 (W.D. Mich 2014) ("[t]hus, the same actor inference is applicable. However, it is not mandatory or dispositive in Defendants' favor. Rather, it merely weakens Plaintiff's evidence of discrimination. Plaintiff must offer strong evidence of pretext to demonstrate that Hurrle discriminated on the basis of race by firing Plaintiff even though it appears she did not discriminate when hiring Plaintiff."). Applying *Wexler*, we therefore uphold the district court's use of the same actor inference.

B. Did the district court err in refusing to admit evidence of Hurrle's statement about Garrett and Maben?

Garrett alleges that Hurrle told Doolen that Hurrle would have to separate Garrett and Maben because "two inappropriate blacks shouldn't be working together." If actually said, this is certainly a troubling statement that suggests racial bias on Hurrle's part. However, the district court correctly ruled that this statement was hearsay and refused to consider it. Hearsay is when a party offers an out-of-court statement for its truth. Fed. R. Evid. 801. This case presents a double hearsay problem and we therefore have to consider Hurrle's alleged statement to Doolen, and then Doolen's statement to Garrett separately.

The district court properly found that Hurrle's statement qualifies as non-hearsay as the statement of a party opponent. Fed. R. Evid. 801(d)(2). However, Doolen's statement to Garrett is hearsay. We have already so held in a companion case involving the same alleged statement. *Maben*, 2015 WL 6719158, at *6. Garrett understandably tries to use *United States v. Portsmouth Paving Co.*, 694 F.2d 312 (4th Cir. 1982) to argue that a statement conveyed through

a third party can qualify as the statement of a party opponent. In that case, a man testified about how he called to speak to a businessman. *Id.* at 321-22. The businessman was not in the office, so the businessman's secretary asked him [her boss] the caller's question and then relayed the answer from her boss to the original caller in a phone conversation. *Id.* The fourth circuit affirmed the district court's ruling that the man's testimony was admissible because the secretary was an agent of her boss for the purpose of relaying messages. *Id.* That meant her statement to the man was a statement of an opposing party made by the party's agent acting in the scope of her employment. Fed. R. Evid. 801(d)(2)(D).

However in this case, relaying comments from management was not part of Doolen's job description or implicit duties. Since the statement therefore does not qualify as the statement of a party opponent, we would have to see if there is an exception to the hearsay rule that would allow the testimony, and Garrett nowhere argued that such an exception applies. Therefore, the district court properly decided not to consider Hurrle's statement.

C. Was the district court correct to conclude that a reasonable jury could not find that Garrett would meet her burden of proof to show pretext?

The district court granted summary judgment because it found that there was insufficient evidence to permit a jury to conclude that Southwestern's rationale for firing Garrett was pretextual. To meet her burden, Garrett would need to show by a preponderance of the evidence that Southwestern's asserted rationale for firing her was really a cover for discrimination. *Burns v. City of Columbus*, 91 F.3d 836, 843 (6th Cir. 1996). Evidence of Hurrle's troubling statement is inadmissible, so Garrett's evidence consists of (1) her allegations—not repeated in her appellant brief—that she was assigned extra cleaning responsibilities compared to white employees and (2) evidence of Gardiner's and Damouth's lenient treatment for what Garrett claims are similar infractions.

Although Gardiner and Damouth were hardly model employees, there are enough differences that they do not constitute terribly good comparisons. Neither is alleged to have used alcohol on the job, driven a patient through a wall, or behaved rudely to patients as Garrett did. Since they are not really similarly situated in respect to their infractions, the fact that Southwestern treated them differently is not a strong indicator of discrimination.

A jury would have to weigh this relatively weak comparison evidence against evidence that Hurrle hired several other black employees including one to replace a white employee, attended a black employee's graduation, and received positive reviews from other black employees. It would also have to consider Garrett's long track record of disciplinary issues outlined earlier. We do not see how a reasonable jury could find by a preponderance of the evidence that Southwestern's rationale for firing her was really just a cover for discrimination.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.